**Henry P. DOLAN, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 94–589.

United States Court of Veterans Appeals.

Argued Aug. 7, 1996.

Decided Sept. 4, 1996.

Edward M. Green, Washington, DC, for appellant.

Alice M. Fent, with whom Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; and David W. Engel, Deputy Assistant General Counsel, Washington, DC, were on the brief, for appellee.

Before FARLEY, HOLDAWAY, and IVERS, Judges.

FARLEY, Judge:

This is an appeal from a July 8, 1994, Board of Veterans' Appeals (BVA or Board) decision which determined that new and material evidence sufficient to reopen a claim for service connection for a duodenal ulcer had not been submitted. This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the BVA decision.

## I. BACKGROUND

The appellant served in the U.S. Army from November 1953 until his medical discharge in February 1955. Record (R.) at 189. An October 1950 x-ray report from St. John's Hospital noted that while no "definite evidence of ulcer crater is seen[,] [t]he findings are indicative of a duodenal ulcer." R. at 16. The appellant had reported a history of an ulcer condition upon being drafted in 1951, but a March 1951 examination at Fort Jay did not confirm this history. R. at 17. Nevertheless, he received a dependent deferment and did not enter the service at that time. R. at 36. He was drafted again in 1953, and although the report from his preinduction examination noted that the appellant had a "history of [an] ulcer," the examiner reported that the condition was not verified in March 1951 and found the appellant to be qualified for service. R. at 17, 242.

A March 1954 gastrointestinal series of x-rays revealed "contraction and irregularity of outline [of the duodenal cap] which may be due to scar formation from previous ulceration.... No evidence of an active ulcer is noted at this time." R. at 46. An April 1954 examination at Fort Dix also did not reveal an active ulcer. R. at 86. In May 1954, the appellant went overseas. *Ibid.* By August 1954, he was hospitalized due to a duodenal ulcer, and an x-ray report showed that his duodenal bulb was deformed and his ulcer was characterized as "probably currently active." R. at 22. He was placed on medication and a "sippy" ulcer diet. R. at 22–23, 27–30, 33–35, 74. In a September 1954 medical record, an examining doctor stated: "In view of the chronic course of this patient's illness it seems unlikely that he will be able to perform consistent duty in this theater...." R. at 35. X-rays taken in September and October 1954 also revealed that the appellant's duodenal ulcer was "probably" active. R. at 97, 101. A December 1954 x-ray showed "contraction and deformity of the duodenal bulb without the demonstration of an ulcer crater," and the examiner's impression was "[o]ld duodenal ulcer with residual deformity." R. at 173.

In January 1955, a medical board found that the appellant was unfit for duty, and that the ulcer condition preexisted service and was not aggravated by service. R. at 142, 172, 177. In a letter to the Army's physical review board, the appellant's representative opposed the finding that the ulcer had not been aggravated by service. He argued that the appellant had been drafted after the Army determined that he did not have an ulcer even though the appellant had informed Army doctors of the ulcer, and that service had aggravated the ulcer. R. at 186–87. No response to this letter appears in the record, and the appellant was given a medical discharge in February 1955. R. at 189.

The appellant immediately applied for service connection. A March 14, 1955, transmittal of records form indicates that the appellant's service medical records (SMRs) were transferred to the Brooklyn, New York, regional office (RO), although the only form checked off among a list of forms listed as "INCLOSURES" is the appellant's DD Form 214, i.e., his report of separation. R. at 191. On March 29, 1955, the RO requested that the "physical exam at induction only" be furnished, but the reply was that "[n]o medical records [were] found," although at the bottom of the form, under the heading

"ORIGINALS (LOANED)," it was typed in that one "phy[sical] exam[ination]/ent" had been previously loaned. R. at 193. The appellant's wife submitted a statement, in which she reported that the appellant had had stomach problems when she first met him in 1950, but that the appellant was told by an Army doctor who examined x-rays that the appellant did not have an ulcer, but rather had a "tender duodenal cap." R. at 196. She also noted that the appellant began to experience severe stomach pains and vomiting while stationed at Fort Dix, that he got worse when he went overseas, and was then sent home. R. at 196–97. In April 1955, the RO denied the claim, finding that the appellant's condition preexisted service and was not aggravated by his time in service. R. at 201. The RO relied on (1) the fact that when hospitalized during service the appellant gave a history of gastric symptoms since the age of 16, and (2) the x-ray report from St. John's Hospital. *Ibid.*

Soon after its decision, the RO received a letter from the appellant's mother, in which she stated:

> My son ... started having trouble with his stomach about 1950. He went to the doctor [who] suggested ... x-rays.... He went to St. John's Hospital and had the x-rays taken, at which time they told him he had a suspicion of an ulcer....
>
> At his preinduction physical they took x-rays at Fort Jay which proved negative.... He didn't have any real trouble with his stomach until he was inducted in the Army in 1953. While he was at Fort Dix he began to get sick again. They took more x-rays which again proved negative. He was sent overseas and his stomach got much worse, so they put him in the hospital where they took more x-rays which showed an ulcer.

R. at 205–06. The RO responded with a confirmed rating decision. R. at 208, 210. The appellant's wife submitted another statement, in which she contended that the service "aggravate[d] [the appellant's] stomach to the point of an active ulcer," and that the SMRs "prove without any doubt that the [A]rmy did aggravate his stomach." R. at 212–13, 216. The RO responded by inform-ing the appellant that he needed to submit new and material evidence and by sending him an appeal form. R. at 219. There is nothing in the record on appeal that suggests that the appellant appealed the denial of his claim.

In October 1991, the appellant sought to reopen his claim. R. at 229. The RO denied the claim in November 1991. R. at 234. The appellant then submitted copies of his SMRs and other records. R. at 236–82. The RO received a December 1991 letter from Dr. Daniel L. Crane, who stated that he had treated the appellant for the last two years and that the appellant "constantly com-plained of severe gastrointestinal symptoms which he claims to have had since his time in the service." R. at 284. The RO issued a confirmed rating decision in February 1992, finding that the submitted evidence was not material. R. at 288.

The appellant testified at a hearing in Oc-tober 1992 (R. at 312–19) that, while he did have stomach problems prior to entering ser-vice, he did not have an ulcer and was first diagnosed with that condition in Germany. R. at 313–15. With regard to the 1950 x-ray, he argued that it did not provide a "definite indication that I ha[d] an ulcer." R. at 315. In November 1992, the hearing officer found that the appellant had not submitted new and material evidence. R. at 321–22. In a May 1993 statement, Dr. Crane wrote that he had been treating the appellant for "several years.... Apparently, this ulcer developed whilst Mr. Dolan was serving in the armed forces in Germany in the middle 1950s." R. at 337.

The appellant testified at a hearing before the BVA in May 1993. R. at 339–57. The appellant's representative contended that the RO had issued its decision in 1955 without reviewing the appellant's SMRs, based on a VA request for information which was an-swered with a report that no records were available, and the fact that the RO issued its decision just a week later. R. at 342. The appellant's representative stated that he had searched for Army memoranda and bulletins regarding what conditions were disqualifying for service in the Army, that the earliest one he could find was from 1955, and that a

duodenal ulcer was a disqualifying condition (the implication being that he could not have had the condition and have been drafted into the service). R. at 350. The representative also stated that he had contacted the Surgeon General's office, and was told that an "individual with a gastric disturbance after the intake of certain foods are [sic] subject to certain stress. That over a period of time [causes] an ulcer [to develop]." R. at 351. He then argued that the stress from basic training for combat and the mess hall food precipitated the duodenal ulcer. *Ibid.*

In July 1994, the BVA found that the appellant had not submitted new and material evidence. R. at 6. The Board found that the SMRs were considered by the RO prior to its 1955 decision, stating that

a document dated March 14, 1955, contained in the envelope with the service medical records notes that medical records had been transferred to the RO prior to the April 1955 rating decision. In addition, the April 1955 rating decision refers to information which is contained in the service medical records. Therefore, the Board must find that the service medical records were considered by the RO in the April 1955 rating decision, and the photocopies of service medical records submitted as additional evidence are not new and material.

R. at 10. The Board basically found that all the evidence except Dr. Crane's statements were not new, and that Dr. Crane's statements did not address when the ulcer developed, and so were not material. R. at 9–10.

## II. ANALYSIS

When a claim is denied as a result of an "initial review or determination," and the claimant fails to timely appeal that decision by filing a Notice of Disagreement (NOD) within the one-year period prescribed in 38 U.S.C. § 7105(b)(1), that decision becomes final and the claim may not "thereafter be reopened or allowed, except as may otherwise be provided by regulations not inconsistent with" title 38 of the United States Code. 38 U.S.C. § 7105(c); *see also Person v. Brown*, 5 Vet.App. 449, 450 (1993) (failure to timely appeal an RO decision within one-year period renders the decision final). However, "[i]f new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." 38 U.S.C. § 5108; *see also* 38 U.S.C. § 7104(b); *Spencer v. Brown*, 4 Vet. App. 283, 286–87 (1993); *Thompson v. Derwinski*, 1 Vet.App. 251, 253 (1991); *Suttmann v. Brown*, 5 Vet.App. 127, 135–36 (1993) (applying § 5108 provisions for reopening final claims to RO decisions rendered final by operation of § 7105(c)).

Evidence is new when it is not merely cumulative of other evidence of record. *Sklar v. Brown*, 5 Vet.App. 140, 145 (1993); *Cox v. Brown*, 5 Vet.App. 95, 98 (1993); *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991); *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). Evidence is material when it is probative of the issue at hand, i.e., "when it 'tend[s] to prove, or actually prov[es]' ... the merits of the claim as to each essential element that was a specified basis for the last final disallowance of the claim," and when, in light of all the evidence of record, there is a reasonable possibility that the outcome of the claim on the merits would be changed. *Evans v. Brown*, 9 Vet.App. 273, 283–84 (1996) (quoting BLACK'S LAW DICTIONARY 1203 (6th ed. 1990)). Whether evidence is new and material is a question of law this Court reviews de novo. *Spencer*, 4 Vet.App. at 287.

Section 1111 of title 38, U.S.Code, titled "[p]resumption of sound condition," provides that wartime veterans shall be considered to have been in sound condition at their entrance into service "except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service." The statutes also contain a presumption of aggravation: Where it is established that a condition preexisted service, that condition "will be considered to have been aggravated by active military ... service[ ] where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural

progress of the disease." 38 U.S.C. § 1153. Both of these presumptions were written into law prior to the 1955 RO decision. *See Akins v. Derwinski,* 1 Vet.App. 228, 231 (1991).

The parties dispute what evidence was before the RO in 1955, and thus, which evidence should be considered when deciding whether new and material evidence has been submitted. It is clear that the two letters from Dr. Crane (R. at 284, 337) and the appellant's testimony at a October 1992 RO hearing and at a May 1993 BVA hearing are newly submitted evidence. However, the appellant argues that the RO did not review his SMRs prior to its 1955 decision, particularly his entrance physical examination, and argues that SMRs which appear in the record at pages 242, 247–48, and 251, were not before the RO in 1955 and are new. Appellant's Brief (Br.) at 14–18. The appellant also argues that the presumptions of soundness and aggravation constitute new and material evidence sufficient to reopen the claim. Br. at 18–22; *see Akins, supra.*

### A. The Presumptions

■ In essence, the appellant asks that the Court determine what documents were before the RO 41 years ago, and exactly how the RO dealt with the presumptions of sound condition and aggravation 41 years ago. We must decline this request. For the Court to adjudicate the issues of whether the RO correctly applied the presumptions in 1955 and what SMRs it considered then would appear to be tantamount to the Court reviewing a decision over which we have no jurisdiction. The Veterans' Judicial Review Act, Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note) (NOD must have been filed on or after November 18, 1988, for Court to have jurisdiction).

Further, review of RO decisions from the 1950s indicates that they were generally briefer than more recent rating decisions, and often listed not much more than the most essential facts and the conclusion of whether or not service connection was granted. The requirements to list evidence considered and give reasons for decisions at that time were not nearly as strenuous as they

are today. It was not until February 1990 that ROs were required by statute to include the reasons for denying a claim in their decisions. 38 U.S.C. § 5104(b); Veterans' Benefits Amendments of 1989, Pub.L. No. 101–237, § 115(a)(1), 103 Stat. 2062, 2065–66 (1989). The requirement that the ROs list "a summary of the evidence considered" was first imposed by the Veteran's Benefits Amendments of 1989. *Ibid.; see Eddy v. Brown,* 9 Vet.App. 52, 58 (1996). Therefore, for the Court to reopen this claim solely because the RO did not specifically mention the presumptions of sound condition and aggravation in its 1955 decision and did not clearly articulate the reasons why each presumption did not attach would require the Court to presume that the RO did not properly discharge its official duties. *See Ashley v. Derwinski,* 2 Vet.App. 62, 64 (1992) (Court must apply the "presumption of regularity" to " 'the official acts of public officers, and in the absence of clear evidence to the contrary, [must] presume that they have properly discharged their official duties.' ") (quoting *United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926)). As the appellant has offered no "clear evidence" that the RO did not consider the presumptions of sound condition and aggravation, the Court concludes that the RO considered all the relevant law and evidence. Accordingly, the presumptions cannot be treated as "new" evidence, and *Akins* does not apply.

### B. The SMRs

■ The record is unclear as to whether the SMRs were before the RO in 1955. The Secretary concludes that the March 14, 1955, transmittal of records form and the March 29, 1955, letter from the RO requesting the appellant's induction examination (R. at 191, 193) indicate that the appellant's SMRs were before the RO, while the appellant reaches the opposite conclusion. *See* Appellant's Br. at 16; Secretary's Br. at 11–13. The Secretary also points out that the 1955 RO decision referred to (1) the fact that the appellant, while hospitalized during service, reported a history of gastric symptoms since the age of sixteen, and (2) that the appellant's "recorded diagnosis was ul-

cer, duodenum without obstruction, [not line of duty,] EPTS [existed prior to service]." R. at 201. Secretary's Br. at 12; *see* R. at 201. Based on this, it would appear that the majority of the appellant's SMRs were before the RO in 1955.

However, even assuming that all of the appellant's SMRs, except those specifically referred to by the RO, were not considered in the 1955 rating decision, this evidence would not be "new" because it is cumulative of previously submitted evidence. The evidence that was before the RO in 1955 established many important facts relevant to whether service connection was warranted. For example, the 1950 St. John's x-ray reported findings "indicative of a duodenal ulcer" although there was no definite evidence of an ulcer crater. R. at 16. The RO was also aware that, during service, the appellant had stated that he had a history of gastric symptoms since the age of 16, as noted in the April 1955 rating decision. R. at 201. It was established from the letters from the appellant's wife and mother that the appellant had a preservice stomach condition that was suspected of being an ulcer, which was not confirmed at his preinduction physical examination; that he didn't have problems until he entered the service; and that he was hospitalized for the condition when he went overseas and then discharged. R. at 196–97, 205–06, 212–17. Accordingly, since the remaining SMRs establish these same facts, they are cumulative of the evidence that was considered by the RO in 1955. Since these records are not "new" evidence, they do not provide a basis for reopening.

C. The Rest of the Evidence

■ Dr. Crane's letters are new, but are not material in that the doctor did not offer an opinion as to when the condition began. Although he stated in his second letter that the ulcer "apparently" developed while the appellant was in the service (R. at 337), this statement was based on the appellant's medical history as recited to him by the appellant, and thus cannot be the basis for reopening the appellant's claim. "Evidence which is simply information recorded by a medical examiner, unenhanced by any additional medical comment by that examiner," does

not satisfy " 'competent medical evidence' " requirement set forth in *Grottveit v. Brown*, 5 Vet.App. 91, 93 (1995). *LeShore v. Brown*, 8 Vet.App. 406, 409 (1995); *see also Reonal v. Brown*, 5 Vet.App. 458, 461 (1993); *Elkins v. Brown*, 5 Vet.App. 474, 478 (1993). As to the appellant's testimony at the hearings and the statements of his representative at the BVA hearing, both the appellant and his representative are laypersons, and as such, are not competent as to the medical causes of his condition. *See Espiritu v. Derwinski*, 2 Vet. App. 492, 494–95 (1992). Therefore, the BVA decision must be affirmed.

Finally, the Secretary argues that the Court should exclude from its consideration the appellant's references in his brief to a medical treatise that was not before the BVA. Secretary's Br. at 8. The Court did not rely on these references in reaching this decision, and the Secretary's argument therefore is moot.

## III. CONCLUSION

Upon consideration of the record on appeal, the appellant's brief, and the Secretary's brief, the July 8, 1994, BVA decision is AFFIRMED.