Ann **MARCINIAK, Appellant,**

**v.**

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 95–0465.

United States Court of Veterans Appeals.

April 21, 1997.

Jeffrey J. Wood was on the briefs for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Thomas A. McLaughlin, Deputy Assistant General Counsel; and Rosalind Eager, Washington, DC, were on the brief for appellee.

Before NEBEKER, Chief Judge, and IVERS and STEINBERG, Judges.

NEBEKER, Chief Judge, filed the opinion of the Court. STEINBERG, Judge, filed a dissenting opinion.

NEBEKER, Chief Judge.

The appellant, Ann Marciniak, appeals a March 27, 1995, decision of the Board of Veterans' Appeals (BVA or Board) which found that new and material evidence had not been submitted to reopen her claims for service connection for the cause of death of her husband, the veteran. After considering the record on appeal and the briefs of the parties, the Court will affirm the Board's decision for the following reasons.

## I. FACTS

The veteran, Henry W. Marciniak, served on active duty from November 1940 to October 1945. Record (R.) at 3. According to a 1980 BVA decision, the veteran's service medical records (SMRs) revealed hospitalization and treatment for scrub typhus and malaria from August 1944 to January 1945, and two complaints of loose bowel movements with abdominal cramps at that time. R. at 24, 26–32. The 1980 decision also revealed that, in 1950, a hemorrhoidectomy was performed after he complained that he had had bloody stools during the past year. Diagnoses at that time included hemorrhoidal tags and proctitis. R. at 28. The regional office (RO) denied service connection for hemorrhoids, varicosities, and organic disability of the gastrointestinal system, but awarded noncompensable ratings for scrub typhus and malaria. At a hearing in 1965, the veteran reported that he did not have problems with diarrhea until after he had the hemorrhoidectomy in 1950, and that he had recurrent problems until 1962 when the condition became severely disabling. R. at 29.

The veteran died on August 8, 1965, of generalized peritonitis due to adrenal exhaustion, and chronic ulcerative colitis. R. at 12, 24. At the time of his death, he was service connected for scrub typhus and malaria, each of which was rated as noncompensable. R. at 27. At a hearing before the RO, Mrs. Marciniak and friends of the veteran testified that after service, the veteran had complained of blood in his stools and diarrhea. R. at 29. Also submitted was testimony by Mrs. Marciniak's representative that medical textbooks demonstrated a connection between ulcerative colitis and dysentery. *Id.* In September 1966, the BVA denied entitlement to service connection for the cause of the veteran's death. R. at 24.

In 1967, copies of the medical textbook articles were submitted to VA, along with additional statements from Mrs. Marciniak and the veteran's friends from service, all attempting to link the veteran's death to his service. R. at 29. In 1971, the BVA again denied Mrs. Marciniak's claim, noting that the SMRs did not show gastrointestinal symptoms in service and that scrub typhus did not involve an infection or ulceration of the bowel. Regarding the medical textbook articles, the Board stated that the evidence in this particular case did not involve the circumstances described in the articles. R. at 30.

In 1979, Mrs. Marciniak requested reconsideration of the 1971 decision, and on March 4, 1980, the BVA again determined that entitlement to service connection was not established for the cause of the veteran's death. R. at 31–32. After this decision was ren-

dered, the veteran's original claims folder was lost. In October 1988, the claims folder was reconstructed after a request to reopen the claim was submitted by the appellant. Her Notice of Disagreement (NOD) was received by VA in April 1990 (R. at 3, 79), and a statement of the case (SOC) was issued in May 1990. The appellant and her son testified before a traveling section of the Board in October 1990, and the appeal was docketed at the Board in March 1991. R. at 78–79. While the Board attempted to procure an independent medical expert's opinion, the reconstructed claims folder was lost. R. at 3, 18. The RO and BVA being unable to find either the original or the reconstructed files, the veteran's folder was again reconstructed. R. at 4. The second reconstructed folder contains the last page of the September 1966 BVA decision (R. at 24), a complete copy of the 1980 BVA decision (R. at 26–32), the October 1990 transcript of the testimony offered by Mrs. Marciniak and her son (R. at 37–53), and other miscellaneous documents. No SMRs are in the second reconstructed folder.

On March 27, 1995, the BVA reviewed the available documents, determined that the appellant's due process rights had not been violated during the appellate process, and declined to reopen her claim as new and material evidence had not been presented since the 1966 denial. R. at 2–20. In the detailed decision, the Board cited 38 U.S.C. § 7104(d) and this Court's decision in *O'Hare v. Derwinski*, 1 Vet.App. 365, 367 (1991) for the proposition that a heightened duty existed to explain thoroughly the reasons and bases for its decision, especially in light of the twice-lost claims folder. R. at 5. The Board determined that the new evidence was not material, as it did not link the veteran's service-connected conditions to his death. R. at 17–18.

## II. ANALYSIS

### A. Procedural Due Process

 As a preliminary matter, the Court recognizes the unfortunate circumstances under which the Board and Mrs. Marciniak have been required to adjudicate this claim. Having twice lost the claims folder, and being unable to locate the missing SMRs and related documents (R. at 61), the Board was forced to rely on the facts as recorded on the first page of the 1966 BVA decision and in the 1980 BVA decision. The appellant alleges that the Secretary failed in his duty to assist in that the SMRs were not obtained for this appeal and that consequently, prejudicial error exists in the BVA's factual findings. However, the Court holds that, given the circumstances in the instant case, we must apply a presumption of regularity as to the BVA's findings of fact in 1980. *Cf. Dolan v. Brown*, 9 Vet.App. 358, 362 (1996) (absent "clear evidence" that an evidentiary assumption was not properly applied, the Court concluded that the relevant law and evidence had been considered). To hold otherwise would require this Court to presume that the BVA, in its prior decisions on this claim, did not properly discharge its official duties. *See Ashley v. Derwinski*, 2 Vet.App. 62, 64 (1992) (Court must apply the "presumption of regularity" to " 'the official acts of public officers, and in the absence of clear evidence to the contrary, [must] presume that they have properly discharged their official duties.' ") (quoting *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926)). Such a presumption would be beyond our jurisdiction, as our judicial review of Board decisions did not begin until 1988.

The dissenter's mistrust of the Secretary and his subordinates is by no means shared by the Court. *See infra* at 207. That two VA employees not concerned with this case committed criminal acts in destroying VA records is not sufficient reason to adopt a holding based on a suspicion that the Secretary and his subordinates would violate their oaths of office. As the appellant has offered no clear evidence that the BVA was derelict in performing its duties, the Court concludes that all the relevant evidence was considered and, in the 1980 decision, the BVA accurately recorded the facts as they then existed. While it is clear that the Board treated the appeals made subsequent to the 1966 decision as attempts to reopen, it is apparent, as a matter of law, that no etiological relationship between the veteran's death and his

service-connected conditions had been established at the time the first decision was rendered. R. at 24. In the section entitled Findings of Fact, the 1966 Board noted that the veteran had no symptoms of colitis during his in-service hospitalization; that he had no chronic type of diarrhea at the time of discharge; that he did not lose weight in service; that no colitis of any type was found on examination in January 1951; that ulcerative colitis was not diagnosed until 1962; that "[t]here [was] no etiological relationship between ulcerative colitis and the service-connected disabilities of scrub typhus and malaria"; and that the veteran's "[d]eath did not result from a service-connected disability." R. at 24. More importantly, as a conclusion of law, the Board found that service connection for the veteran's death was not established by reason of the veteran's service-connected disabilities, and was not etiologically related to any disease or disability which was incurred in or aggravated by service. R. at 24, 29.

▮ The BVA decision of 1980 noted that "[a]t a hearing at the regional office in May 1965, the veteran reported that he did not have any problems with diarrhea until after he had a hemorrhoidectomy in 1950," almost five years after his discharge. R. at 29. From this, it is clear that the appellant has then failed to present a well-grounded claim. *See Murphy v. Derwinski,* 1 Vet.App. 78 (1990). However, regardless of whether this claim is analyzed to determine whether it is well grounded, or to determine whether it should be reopened, the result is the same. Without the medical evidence to link the veteran's service to his death, the evidence is insufficient to meet either test. *Grottveit v. Brown,* 5 Vet.App. 91, 92–93 (1993); *Moray v. Brown,* 5 Vet.App. 211, 214 (1993). Accordingly, the BVA's inability to obtain the missing documents is not a cause for remand that, in all likelihood, would be futile anyway.

▮ Mrs. Marciniak also argues that it is indeterminable whether the SOC issued in May 1990 contained the necessary information as required by law. 38 U.S.C. § 7105(d); *see also* 38 C.F.R. § 19.29 (1995). The Secretary has conceded that the SOC is unavailable for review. Secretary's Brief

(Br.) at 18. Nevertheless, the appellant has not alleged with specificity any prejudice that resulted from the loss of the SOC. *Cf. Parker v. Brown,* 9 Vet.App. 476, 481 (1996) (VA's failure to fill out a form required by regulation was not basis for remand where no prejudice to appellant established). Moreover, in the decision here on appeal, the BVA set forth the purpose and requirements of a proper SOC, and gave specific details to demonstrate how they had been met in the course of these proceedings. R. at 7–11. The Court holds that the BVA complied with the requirements set forth in *O'Hare, supra,* in that heightened consideration was afforded due to the missing records. The Board concluded: "[I]n light of the evidence that during the current appeal [Mrs. Marciniak] has been aware of the issue on appeal, the pertinent laws and regulations, and the relevant evidence, any deficiencies that may have been contained in the Statement of the Case constituted harmless error." R. at 10. In the absence of demonstrated prejudice, the Court concludes that the unavailability of the SOC, and the presumption of regularity as to it, like as to other missing records, does not warrant a remand for further adjudication which would likewise be futile. Thus, the unavailability of the SOC is harmless. *See* 38 U.S.C. § 7261(b) (requiring Court to take into account rule of prejudicial error); *see also O'Hare, supra.*

### B. New and Material Evidence

▮ The Court reviews de novo whether new and material evidence has been presented to reopen a claim. *See, e.g., Masors v. Derwinski,* 2 Vet.App. 181, 185 (1992). The newly submitted evidence includes: (1) excerpts from medical textbooks, including support for the theory that a connection between dysentery and chronic ulcerative colitis exists; (2) testimony by friends and family of the veteran; -and (3) a statement from a person who served with the veteran. Mrs. Marciniak has not submitted any medical evidence linking the veteran's service-connected scrub typhus or malaria to the alleged dysentery, and then further to his death. Where, as here, the determinative issue is one of medical causation, competent medical

evidence connecting the cause of death to an in-service disease is required. *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995). "[L]ay assertions of medical causation cannot suffice to reopen a claim under 38 U.S.C. § 5108." *Falzone v. Brown*, 8 Vet.App. 398, 403 (1995). There appears to have been no evidence that the veteran had dysentery during service. Therefore, the medical literature linking his death to that condition is not material. *Edenfield v. Brown*, 8 Vet.App. 384, 388 (1995) (en banc). While the testimony of the appellant and her son disclose their observation of symptoms from which the veteran suffered, there has been no competent medical evidence linking the veteran's service-connected conditions to those symptoms, and then further to his death. Thus, the Court holds that new and material evidence has not been presented in support of the appellant's claim. *See* 38 U.S.C. §§ 5108, 7104(b); *see also Moray v. Brown*, 5 Vet.App. 211, 214 (1993) (holding that lay assertions of medical causation cannot serve as the predicate to reopen a claim).

▇▇▇ Finally, the appellant asserts that VA failed to comply with its duty to notify a claimant of the evidence necessary to complete the application for benefits. 38 U.S.C. § 5103(a). The appellant's brief states that during the informal hearing presentation, "the veteran's son related ... that his father indicated that doctors had told him his condition was related to service." Reply Brief at 1. However, recourse to the hearing transcript reveals that the veteran's son actually said: "We were always making trips back and forth to the doctors and the diagnosis that he had always told me was that it was service related." R. at 43. This testimony is too attenuated to show availability of medical records sufficient to trigger the section 5103(a) duty. Nothing in the son's testimony put the Secretary on notice of the likely existence of competent medical evidence that would be relevant to a full and fair adjudication of the claim. *Robinette v. Brown*, 8 Vet.App. 69, 77 (1995). Under *Robinette*, there must be some degree of probability that once the Secretary informs the appellant of the necessity of a statement from the

doctor, the appellant will be able to obtain such a statement. *Id; see also Beausoleil v. Brown*, 8 Vet.App. 459, 465 (1996) (Court stated that there is a § 5103(a) duty "in the limited circumstances where there is an incomplete application that references other known and existing evidence"). The Court thus holds that the circumstances which would trigger a § 5103(a) duty are not present in this case.

## III. CONCLUSION

Accordingly, the Board's decision is AFFIRMED.

STEINBERG, Judge, dissenting.

This is a case where the majority's application of judicial doctrine, without regard to the context of that application, produces a result contrary to law and to the dictates of common sense and fairness. Because no "presumption of regularity" can make the patently irregular regular or the facially unjust just, and for the reasons that follow, I dissent from the majority's disposition and the path by which it is reached. In my view, the Board of Veterans' Appeals (BVA or Board) had an affirmative duty to take further steps to try to reconstruct the missing claims file.

## I. Loss and Reconstruction of the Claims File

The majority's opinion concludes that there is no constitutional or other legal infirmity in the March 27, 1995, Board decision in this case, which proceeded to an adjudication on the merits in spite of the fact that the Department of Veterans Affairs (VA) has twice lost the claims folder, once in 1988 and again, after the appeal was docketed at the Board, in 1991. Record (R.) at 3–4. In deciding that the appellant had not presented new and material evidence, the BVA relied upon the "reconstructed" claims folder, which contained only the following: The last page of its September 1966 decision; its March 1980 reconsideration decision; a transcript of an October 1990 BVA hearing; and "miscellaneous other documents".[1] R. at 4. The

---

1. Although it is not totally clear what those "miscellaneous other documents" were, the record on

decision contains no statement as to how complete or fragmentary the Board believed that "reconstructed" folder to be, nor does the record on appeal (ROA) contain any indication that when the claims folder was lost for the second time, after the appeal was docketed, the Board notified the appellant that VA had lost the claims folder, inquired as to her ability to assist in its reconstruction, or informed her that it would be proceeding to adjudicate her claim on the merits on the basis of an incomplete record.

Rather than examining the facially apparent infirmity of the process accorded the appellant in her appeal before the Board to determine if it involved a due process or other legal violation, the majority interprets two of this Court's prior opinions as providing the imprimatur of "regularity" to the Board's decision.. The majority thereby begs the question of whether the appellant was afforded a review by the BVA that satisfied constitutional and other legal requirements and whether, in fact, she had submitted new and material evidence to reopen as to her claim for service connection for the cause of her husband's death. The majority's reliance on *Dolan v. Brown*, 9 Vet.App. 358, 362 (1996), and *O'Hare v. Derwinski*, 1 Vet.App. 365, 367. (1991), is misplaced and fails to address adequately the seriousness of the loss of the claims folder while the case was on appeal to the BVA and of the BVA's making a decision on a fragmentary record without providing the appellant further opportunity to supplement, or to assist in reconstruction of, the record. Just as the Board cannot rely—to an appellant's detriment—upon evidence that it has generated, without providing the appellant with notice of its intention to reply on that evidence and an

opportunity to respond to it, *see Thurber v. Brown*, 5 Vet.App. 119, 126 (1993), neither, it seems to me, should the Board be permitted to rely—to the appellant's detriment—upon the nonexistence of evidence that it has lost, without providing the appellant with notice of the loss of the evidence and an opportunity to correct that loss and respond to it.

In *Dolan*, the Court, in refusing to look behind the surface of a 41–year–old VA regional office (RO) decision, noted the presumption ("absent clear evidence to the contrary") that public officers have "properly discharged their official duties." *Dolan*, 9 Vet.App. at 362 (citing *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926)). To the extent that the majority wishes to look to *Dolan* for a presumption of regularity that prohibits it from inquiring, absent clear evidence to the contrary, into the factual determinations of the 1980 BVA decision, I believe its application of that decision is appropriate. That 1980 BVA decision is final, and the Court possesses no jurisdiction to review it.[2] However, I think it a vast leap from that to say, as the majority appears to in this case, that the presumption of regularity that the Court is giving to the 1980 BVA decision's recitation of the "facts" justifies the 1995 BVA decision's reliance on those facts for anything other than an explanation of the status of the evidence *in 1980*. In *Dolan*, the Court used the presumption of regularity to avoid digging into the validity of an RO decision over which it had no jurisdiction; in the opinion in this case, the Court uses the presumption of regularity to avoid reviewing the validity of a BVA decision that *is* before the Court. The point in this case is not whether the 1980 BVA decision was defective

---

appeal—in addition to the documents itemized above—contains only two hearing worksheets (Record (R.) at 34–35), apparently prepared in connection with the October 1990 hearing; correspondence relating to the solicitation of an independent medical expert in 1992 (R. at 55–59); a 1994 Department of Veterans Affairs (VA) internal memo stating that the claims folder was lost (R. at 61); copies of laws and regulations (R. at 63–76); and a copy of a document (R. at 78–79) referred to as a "briefface" in the Board of Veterans' Appeals (BVA or Board) decision (R. at 4).

2. *See* Veterans' Judicial Review Act, Pub.L. No. 100–687 § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note) (Court has jurisdiction to review only those final BVA benefits decisions prior to which Notice of Disagreement was filed on or after November 18, 1988, as to underlying decision of VA regional office or other agency of original jurisdiction); *Smith (William) v. Brown*, 35 F.3d 1516, 1526 (Fed.Cir. 1994) (final BVA decision not subject to review for clear and unmistakable error under 38 C.F.R. § 3.105(a)).

but whether the BVA decision on appeal is defective. Although the 1980 BVA decision's discussion of the evidence then before it, in the context of a presumption of regularity and in the absence of the actual pre–1980 evidence, may assist the Board in determining whether evidence presented since then is "new",[3] it can supply *no* reckoning of *the extent* of the evidence presented after 1980, which is precisely the issue in question. The presumption of regularity that the Court attaches to the 1980 Board decision appears to slide into a presumption that the Board in 1995 had all the evidence before it necessary for a determination of whether new and material evidence had been presented. Such a presumption accords regularity to the actions of officials of the very government that twice has lost the entire claims file. In a rather Kafkaesque parody, that irregularity—losing the file—is what has become the "regular" in this case.

The majority's reliance upon *O'Hare* is similarly misplaced because the majority treats this as a "missing records" case calling only for "heightened consideration". *Ante* at 201. *O'Hare* found that, when there were **missing service medical records** (SMRs), the Board had a heightened reasons-or-bases duty to explain how it reached its decision in the absence of those records. *See O'Hare, supra;* 38 U.S.C. § 7104(d). I cannot extrapolate from that holding, as does the majority, that the BVA can excuse its loss of a claims folder, and a decision made upon a "reconstructed" record of uncertain completeness, by explaining very carefully how it used what remained of the record to make its decision. This is not a case involving some missing records. It is a case where the entire record has been lost *and* was lost by the other party to the litigation. Moreover, the situation in *O'Hare* arose where both parties were aware that SMRs were missing and had had the opportunity to develop the record. In this case, it is not plain that the appellant was ever even informed, prior to the Board's decision here on appeal, that the claims folder had been lost a second time.

Thus, *Dolan* and *O'Hare* do not lead to the majority's conclusion. Moreover, in light of *Moore (Howard) v. Derwinski,* 1 Vet.App. 401, 406 (1991), which found a heightened duty to assist under 38 U.S.C. § 5107(a) in a missing-records case, and *Dixon v. Derwinski,* 3 Vet.App. 261, 263 (1992), which held that VA breached the duty to assist where it failed to inform the claimant of the need to submit "alternative forms of evidence" where SMRs were lost, and based on the analysis in part II.A., below, regarding the applicable burden of proof as to the well groundedness of the claim, I conclude that the BVA had an affirmative duty, upon its loss of the claims folder, either to stay proceedings and advise the appellant of the need to assist in reconstruction of the claims folder or to remand to the RO for such reconstruction. *Cf. Thurber, supra.*

Furthermore, the majority opinion misstates the due process concern implicated in a case such as this when it concludes that "the BVA's inability to obtain the missing documents is not cause for remand that, in all likelihood, would be futile anyway." *Ante* at 201. The question is not and cannot be whether, on the fragmentary record remaining after the BVA lost the claims folder, it appears that the appellant would prevail upon remand; the question is whether the Court, and the Board earlier, places proper reliance—without doing more—upon the fragmentary record before it to conclude that the appellant had not, as a matter of law, presented new and material evidence. The weight of available legal authority[4] strongly

---

3. To the extent that evidence was described in the prior Board decision, the Board might rely upon that description—even in the absence of the claims-file evidence—to conclude that evidence later presented was not, in fact, new. To the extent evidence *not* described in that prior BVA decision was later presented, in a case like this, a presumption that it was new would appear to be in order.

4. *See* 52 AM.JUR.2D *Lost and Destroyed Instruments* § 33 (1970) ("As a general rule, the substitution or restoration of a judicial record or parts thereof can be made only after proper notice to the opposite party"); 4 C.J.S. *Appeal and Error* § 457 (1993) ("Copies of lost or destroyed records must be supplied, except where the portion lost is immaterial to a proper determination of the cause. It has been held that the loss of a portion of the record is no ground for reversal, *unless the loss was due to a fault of the appellee*

suggests that the simple fact that the BVA proceeded with an adjudication on an incomplete record *without advising the appellant or giving her a chance to supplement the record* creates a procedural deficiency no matter how carefully the Board explains how it arrived at its decision based on what it had before it. Thus, I would remand, pursuant to a heightened section 5107(a) duty to assist, for the BVA to allow the appellant to supply any material she can to assist in reconstructing the claims folder and, because it is not clear from the ROA what role the RO played in reconstructing the claims folder the second time, for the BVA to require the RO to assist in reconstruction.

## II. Merits of the Case

### A. Burden of Proof

The finality doctrine set forth in 38 U.S.C. § 7104(b) states:

[W]hen a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered.

In short, a claimant cannot hope for an adjudication and award based *solely* upon evidence already determined to be insufficient. But this is not to say that the finality doctrine of section 7104(b) requires that the appellant present new and material evidence, for the purposes of 38 U.S.C. § 5108, in order for the Board to proceed to consider the claim and take steps to develop the claim further if the Board decides that the claimant has submitted sufficient evidence to well ground the claim—although, of course, section 5108 *requires* readjudication where new and material evidence is presented ("the Secretary shall reopen ..."). *See Ivey v. Derwinski*, 2 Vet.App. 320, 322–23 (1992); *White (Frank) v. Derwinski*, 1 Vet.App. 519, 521 (1991); *Ivey*, 2 Vet.App. at 327–29 (Steinberg, J., concurring) (distinguishing section 7104(b)'s preclusion as to a claim being "reopened *and* allowed", in the case of a final Board decision, from 38 U.S.C. § 7105(c)'s

preclusion as to a claim being "reopened *or* allowed", in the case of a final RO decision) (emphasis added). New and material evidence is not required for "consideration" and further development alone, as to well-grounded claims, as long as "some new evidence" is presented that would change "the factual basis" for consideration of the claim. *Ibid.*

Under this construction of section 7104(b), although this is a claim to reopen, *only* the well-groundedness test, and not the new-and-material-evidence test, should be applicable in determining the applicability of VA's duty to assist the appellant. This is especially so because there is no fair way to look at the evidence for purposes of determining whether "new" evidence has been presented when we do not know if we have it all, let alone all the "old" evidence. Because the ROA is bereft of both the evidence preceding and subsequent to the last Board decision, section 7104(b) cannot preclude consideration and further development, given that it is not possible to make a rational finding that the claimant is asking that the claim be considered on the *same* factual basis as the Board's 1980 denial.

The standard for what is a well-grounded claim under 38 U.S.C. § 5107(a) is the evidence that would be "sufficient to justify a belief by a fair and impartial individual that the claim" is "plausible ... or capable of substantiation." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). Surely, a fair and impartial individual assessing the well groundedness of the appellant's claim would set the well-groundedness threshold very low and conclude that the claim is plausible in view of the unique circumstances here present. *See Woodson v. Brown*, 87 F.3d 1304, 1307 (Fed.Cir.1996) (withholding judgment on "what effect, if any, the loss of a veteran's records due to no fault of the veteran ... has on that veteran's burden of proof under [38

----

...." (emphasis added); "Some authorities hold that, where material parts of the record are lost or destroyed through no fault of the appellant, the appellate court should remand the case provided appellant has exercised due diligence and is not guilty of laches"); *see also Fowler v. Califano*, 596 F.2d 600, 604 (3d Cir.1979) (remanding

social security claim where record of appellant's prior claim, through no fault of her own, had been lost and appellant provided evidence to reconstruct the record; the court was "inclined to agree" that it is "unconscionable for the Administration to take a position that in effect permits it to profit by its own errors").

U.S.C.] § 5107(a) when the lost records may be necessary to establish eligibility for benefits"), *affirming in part and dismissing in part*, 8 Vet.App. 352 (1995); *Russo v. Brown*, 9 Vet.App. 46, 50 (1996) (implicitly presuming that claim is well grounded, and proceeding to adjudication on merits, where SMRs were lost and 38 U.S.C. § 1154(b) applied).

### B. 38 U.S.C. § 5103(a) Duty

I also believe that the majority opinion articulates the 38 U.S.C. § 5103(a) duty too narrowly in this case when it concludes that the son's testimony "is too attenuated to show availability of medical records sufficient to trigger the section 5103(a) duty." *Ante* at 202. I find no such existing-medical-record requirement in Court precedent, and this is surely the worst case imaginable in which to create one. *See Robinette v. Brown*, 8 Vet. App. 69, 80 (1995) (on the facts of the case, Secretary "was on notice that relevant evidence *may* have existed, *or could have been obtained* ... ") (emphasis added); *cf. Meyer v. Brown*, 9 Vet.App. 425, 429–30 (1996) (where no particular statement from the doctor was expressly identified and statements by mother and siblings regarding veteran's treatment by deceased father invoked section 5103(a) duty to notify).

It is arguable that under *Robinette* and *Meyer* the son's remarks in this case might have sufficed to invoke a section 5103(a) duty if this were a regular case. However, this is a special case, insofar as the entire claims folder has been lost. In such a case, VA should have a particular duty to inform the appellant of the need to supplement the missing record and that the missing record also causes her application to be "incomplete". That is, in such a case I would find a heightened *Robinette* duty under section 5103(a) for the same reason the Court found in *O'Hare* and *Moore* heightened reasons-or-bases and duty-to-assist requirements in a lost-records case—that is, that this Court is unnecessarily hampered in its review of the BVA decision absent additional, heightened effort by VA to supply a more complete record.

### C. 38 C.F.R. § 3.103(c)(2) Duty

The majority opinion also neglects to examine or comment upon the violation of the regulatory duty under 38 C.F.R. § 3.103(c)(2) of VA hearing officers to "suggest the submission of evidence which the claimant may have overlooked". Even in the absence of the extraordinary circumstances evidenced in this case by the lost claims file, it seems clear to me that the § 3.103(c)(2) duty was violated here insofar as the hearing officer apparently failed to inform the claimant of the need to submit statements from the doctors in question. *See Douglas v. Derwinski*, 2 Vet.App. 103, 110 (1992); *reaff'd on this ground, Douglas v. Derwinski*, 2 Vet.App. 435, 440–41 (1992) (en banc).

### III. Conclusion

This case presents a prime example of a situation where a court needs to be especially mindful of the potential consequences of its action. The application of a rule of deference based on a presumption of regularity in a lost-file case—besides being an oxymoron of sorts—may lead to less care in VA's handling of records. Certainly, the obverse would be true; a refusal to accord such deference would be likely to produce greater VA care. It might also be asked whether, in the consideration of a lost-file case such as this, the Court should take judicial notice of the highly publicized situation, which has been the subject of many pleadings (by appellants and the Secretary) in other cases in this Court, where BVA employees willfully and deliberately destroyed large quantities of claims-file records. *See, e.g., McDonald v. Brown*, U.S.Vet.App. No. 95–12 (order May 30, 1996) (Court grants May 29, 1996, joint motion for remand in case where appellant's records may have been tampered with by former BVA employees); *see also* BVA CHAIRMAN'S FISCAL YEAR 1995 ANN. REP. 15 (relating case of two BVA attorneys who removed essential documents from appellants' claims files in order to force remand to RO). Notwithstanding the unfortunate suggestion in the majority opinion, my position in this case is not based on mistrust of the Secretary or the BVA Chairman; I have every confidence that both have taken steps to avoid any repetition

of record destruction.[5] However, I cannot be unmindful, as the majority appears to want to be, of the potential impact of the holding in this case, or pretend that what has happened in the real world of BVA claims adjudication did not happen and could not happen again.

This is admittedly an unusual case. That is all the more reason why the Court should avoid appearing to sanction the disappearance of vital records solely within the control of the other party. Instead, at each point where it could avoid sanctioning such a result, the majority ignores precedent or stretches it in a way that results in a finding adverse to the appellant.

For the reasons set forth in this dissenting opinion, I am unable to concur in the majority's analysis or disposition of this case, and I respectfully dissent.

---

5. I am no more expressing mistrust of VA officials than was the Court in *Smith (George) v. Brown*, when it refused an interpretation of 38 U.S.C. § 7103 suggested by the Secretary that would have allowed the BVA Chairman to "defeat the right to judicial review at a critical juncture in a case by ordering reconsideration of a prior decision which is beyond the reach of that right", *Smith v. Brown*, 8 Vet.App. 546, 552 (1996) (en banc); or was the Court in *MacWhorter v. Derwinski*, when it found the Secretary's motion for summary disposition "inappropriate ... when it does not address all issues presented and all forms of relief potentially implicated", *MacWhorter v. Derwinski*, 2 Vet.App. 655, 657 (1992); *see also id.*, 2 Vet.App. 133, 135 (1992);

or was the Court (the same judges as are here empaneled) in *Murillo v. Brown*, when it refused to give "the BVA a license, without the Secretary's having to adhere to the requirements of appropriate public notice and opportunity to comment ... to prevent successive filings of [reconsideration motions], or to force a claimant to forgo appeal to this Court if he wished to seek BVA reconsideration again, by delaying action on a reconsideration motion until the applicable 120–day judicial appeal period had run as to the underlying BVA decision", *Murillo v. Brown*, 10 Vet.App. 108, 110 (1997). What I *am* doing is seeking to ensure that VA adheres to the procedural protections established by law and regulation.