# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-3084

GENE S. GROVES, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided March 25, 2021)

*Gene S. Groves*, pro se.

*James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; *Selket N. Cottle*, Deputy Chief Counsel; and *Mark D. Vichich*, Senior Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

*Michael J. Schrier*, of Washington, D.C., was on the brief for the Veterans Consortium Pro Bono Program as amicus curiae.

*Jennifer Librach Nall*, of Austin, Texas; *Jacob McDonald*, *David Tobin*, and *Harrison Rich*, all of Dallas, Texas, were on the brief for the Veterans Consortium Pro Bono Program as amicus curiae.

Before BARTLEY, *Chief Judge*, and MEREDITH and FALVEY, *Judges*.

MEREDITH, *Judge*, filed the opinion of the Court. BARTLEY, *Chief Judge*, filed an opinion concurring in the result.

MEREDITH, *Judge*: On August 29, 2019, the Court affirmed a July 11, 2017, Board of Veterans' Appeals (Board) decision that denied the self-represented appellant, Gene S. Groves, entitlement to VA Vocational Rehabilitation and Employment (VRE)[1] benefits under chapter 31, title 38, U.S. Code.[2] Record (R.) at 1-18. Shortly thereafter, the appellant filed a motion for panel

---

[1] This program was renamed the Veteran Readiness and Employment Service in June 2020.

[2] The Board remanded the matters of whether new and material evidence had been submitted to reopen previously denied claims for benefits for bilateral hearing loss and tinnitus, and those matters are not before the Court at this time. *See Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (per curiam order) (a Board remand "does not represent a final decision over which this Court has jurisdiction"); *Hampton v. Gober*, 10 Vet.App. 481, 483 (1997) (claims remanded by the Board may not be reviewed by the Court). Additionally, the Board referred to the agency of original jurisdiction a claim for a psychiatric disability, including anxiety and depression; the appellant does not

review, which the Court granted for the purposes of determining the effect, if any, of a claimant's written request to VA that it refrain from adjudicating his or her claim. After granting the appellant's motion for panel review, the Court withdrew the August 2019 memorandum decision and sought briefing from amici curiae.

This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). Although the Court agrees with the appellant that the Board erred in adjudicating his VRE claim despite his requests to pause the adjudication, we find that such error is procedural in nature and that the appellant has not demonstrated that the error was prejudicial to him. Accordingly, the Court will affirm the Board's decision.

## I. BACKGROUND

The appellant served on active duty in the U.S. Army from January 1970 to August 1971, including service in Vietnam. R. at 7456. In October 1990, a VA regional office (RO) awarded him benefits for post-traumatic stress disorder (PTSD), shell fragment wounds, and a nerve injury. R. at 6506-07.

This case concerns two claim streams. First, in December 2005, the Board denied entitlement to VRE benefits based on the appellant's purported failure to cooperate, R. at 2459-74, and he appealed to the Court.[3] In his brief to this Court in 2009, the Secretary conceded that the Board erred by not addressing whether VA had complied with various regulatory requirements before discontinuing the appellant's VRE services. R. at 1354. The Court accepted the Secretary's concession in a November 2009 memorandum decision and remanded the matter for the Board to provide an adequate statement of reasons or bases, taking into account all relevant evidence and regulations. R. at 1354-55.

Second, in September 2009 (while the appeal of the December 2005 Board decision on VRE benefits was pending before the Court), the Board issued a decision "contrary to the appellant's position on 10 different service-connection issues as well as entitlement to an increased

---

contend that remand rather than referral was warranted. *See Young v. Shinseki*, 25 Vet.App. 201, 203 (2012) (en banc order) (per curiam).

[3] The record reflects that the appellant sought VRE benefits in October 1998, R. at 6472, and that VA has encountered significant difficulty over the years in providing him an initial VRE evaluation, due—at least in part—to the isolated nature of his town and his asserted inability to travel, *see, e.g.*, R. at 3201-02, 4968, 5045, 5055, 5244, 5573.

disability rating for a service-connected shell fragment wound and a total disability rating based on individual unemployability (TDIU)."  R. at 618; *see* R. at 1425-64.  In March 2012, the Court dismissed the appeal of that decision because the Board in September 2009 addressed the matters that it had remanded in a separate December 2005 decision[4] despite the fact that, within 2 weeks of the remand, the appellant advised VA in a written statement that he "enjoin[ed] the RO and [the Board] from further action regarding the . . . remanded claims," R. at 2413.  *See* R. at 628 (Court's Mar. 2012 memorandum decision).  The Court noted that, in his written statement, the appellant quoted the following language from *Hamilton v. Brown*: "[W]here . . . the claimant expressly indicates an intent that adjudication of certain specific claims not proceed at a certain point in time, *neither* the RO nor the Board *has authority to adjudicate* those specific claims, absent a subsequent request or authorization from the claimant or his or her representative."  4 Vet.App. 528, 544 (1993) (en banc) (emphasis added), *aff'd*, 39 F.3d 1574 (Fed. Cir. 1994); *see* R. at 628.  The Court stated that, "[w]ithout the specific authorization of the appellant to do so, any adjudication by the Board [of the enjoined matters] would be void ab initio," and therefore concluded that, "[i]n the absence of any such authorization," the appeal must be dismissed.  R. at 630.

In June 2012, perhaps as a result of receiving the Court's March 2012 decision dismissing his appeal of his service-connection claims and TDIU request, the appellant advised VA that he "enjoin[ed] the RO and [Board] from further action . . . regarding the [VRE] claims due to the destruction of records[] and repeated [c]onstitutional and due process violations."  R. at 599.  In a January 2013 decision, the Board acknowledged the appellant's June 2012 letter but determined that it did not "constitute a withdrawal of [his] appeal and there is no basis for the Board not to proceed with appellate review of this case."  R. at 589.  The Board then remanded the VRE matter to the RO for proper notice to the appellant and to schedule an initial VRE evaluation.  R. at 589-91.

The RO contacted the appellant in October 2013 (R. at 552-53, advising him that his case had been assigned to a contract vocational rehabilitation counselor), December 2013 (R. at 544, advising him that it had been "brought to [VA's] attention that" the RO's "regular Tuesday or Thursday briefings" were not convenient for him and asking him to call to schedule a time that would "fit [his] schedule"), and March 2016 (R. at 117, advising him that a counseling appointment

---

[4] The Board in December 2005 issued two decisions, one denying VRE benefits and one in part remanding service-connection claims and entitlement to TDIU.  *See* R. at 2459-74, 2477-93.

3

had been scheduled at the RO for March 22, 2016). The record reflects that the appellant did not attend the March 2016 appointment, nor did he call to cancel or reschedule. R. at 115.

In October 2016, VA received another letter from the appellant, enjoining the agency "from any further adjudication of his claims." R. at 93. In a November 2016 decision, the Board acknowledged the appellant's most recent letter but again determined that it did not "constitute a withdrawal of [his] appeal and there is no basis for the Board not to proceed with appellate review of this case." R. at 90. The Board then remanded the VRE claim for the RO to issue a Supplemental Statement of the Case (SSOC). R. at 91-92; *see* R. at 52-81.

The following year, the matter returned to the Board, which issued the decision on appeal in July 2017. R. at 1-18. The Board stated: "The [appellant] has submitted numerous 'motions to enjoin' the Board from issuing a decision with regard to the VRE claim. However, these notices do not constitute [] withdrawal[s] of the appeal, such that there is no basis for the Board to not proceed with its appellate review of this claim." R. at 2. The Board denied the appellant's request for VRE services on the merits, and this appeal followed.

## II. ANALYSIS

### A. Parties' Arguments

In his informal brief, which the Court liberally construes, *see De Perez v. Derwinski*, 2 Vet.App. 85, 86 (1992), the appellant argues that the Board violated *Hamilton* by adjudicating his VRE claim despite his repeated requests that VA refrain from doing so. Appellant's Informal Brief (Br.) at 2-3. He further asserts that the Board's decision runs afoul of the Court's March 2012 memorandum decision finding the Board's September 2009 adjudication of 10 matters and TDIU void ab initio. *Id.* at 2.

The Secretary counters that *Hamilton* "cannot be read as establishing an absolute right to keep a claim pending indefinitely." Secretary's Br. at 12. Instead, he asserts that "*Hamilton . . .* holds that a veteran can appeal a decision that the RO was not authorized to make in the first place." *Id.* at 13. He contends that the March 2012 single-judge decision has no bearing on this case because it did not concern the appellant's claim for VRE benefits. *Id.* at 14.

4

Once this matter was referred to a panel, the Court sought briefing from amici curiae.[5]  In response, Mr. Schrier argued that the en banc Court's discussion in *Hamilton* of a claimant's ability to prohibit VA from adjudicating his or her claim is clear and unequivocal: "[I]t creates a procedural tool for veterans to pause the adjudication process to ensure that each veteran receives a fair hearing and is not forced to have claims adjudicated before the veteran is satisfied that a complete record exists."  Schrier Br. at 3.  He contends that the Secretary's interpretation—that *Hamilton* stands only for the proposition that a claimant may appeal a decision that the RO was not authorized to make—is not supported by the Court's language in *Hamilton* and, in any event, a claimant is always free to appeal an RO decision, including on the basis that the RO lacked jurisdiction.  *Id.* at 4-5.  Mr. Schrier further argues that, although the Court in *Hamilton* did not expressly set a time limit "for how long any particular claim/adjudication may be unilaterally stayed by the veteran, the only party potentially prejudiced by [the rule in] *Hamilton* . . . is the veteran," *id.* at 5-6, and there is "virtually no administrative burden" on VA when it suspends a case, *id.* at 6.  Finally, he concedes that the Secretary raises a valid policy concern in arguing that *Hamilton* should not be read to permit "perpetual stays," but he argues that neither the RO, the Board, nor this Court "should . . . be permitted to substitute their judgment for the veteran's as to when the *Hamilton* stay should end until a sufficiently long period of time has elapsed and there is a clear record demonstrating that the veteran has taken no action and intends to take no action to supplement the record to prepare [his or her] claims for adjudication."  *Id.* at 7.

In her amicus brief, Ms. Nall first argues that the Court's March 2012 memorandum decision is "preclusive as a matter of collateral estoppel."  Nall Br. at 2.  In that regard, she asserts that the issue in this case—which she frames as whether a claimant's written request to pause adjudication inhibits VA's authority to adjudicate claims—is identical to the issue decided by the Court in March 2012.  *Id.*  Further, she contends that the issue was raised in the appellant's pleadings in that case, submitted, and decided; the determination of the issue was necessary to the Court's dismissal for lack of jurisdiction; and the Secretary had a full and fair opportunity to litigate the issue.  *Id.*  Next, Ms. Nall argues that a claimant's right to pause adjudication has its roots in procedural due process and is a "corollary" to the Court's decisions that require VA to adjudicate

---

[5] In accordance with the Court's Internal Operating Procedures (IOP), upon referral to panel, this matter was stayed for 30 days to permit the appellant to retain counsel, but he declined representation.  *See* U.S. VET. APP. IOP V(b)(3).  The Court is grateful to the amici for their assistance.

all issues raised by a claimant. *Id.* at 3 (citing *Hamilton*, 4 Vet.App. at 544). She contends that any distinction between the appellant's written requests in this case and the verbal requests in *Hamilton* "would inhibit the VA's ability to make decisions on a complete record," because both written and verbal evidence are important to the development of the record. *Id.* at 3-4. Moreover, she argues, VA's statutes and regulations reflect a preference for written requests. *Id.* at 5.

The Secretary filed a response to the amicus briefs. Therein, he argues that the doctrine of collateral estoppel is not relevant here because the "issue"—the proper interpretation of *Hamilton*—was not actually litigated in the March 2012 memorandum decision. Secretary's Supplemental (Supp.) Br. at 13. He also asserts that "[t]he Court should reject [any argument predicated on collateral estoppel] because [the a]ppellant did not raise a collateral[]estoppel issue in his brief or his motion for panel review and the Court did not ask for any briefing on that issue." *Id.*

Next, the Secretary argues that the Court in March 2012 "[m]isread" *Hamilton*. *Id.* at 2. He asserts that the purpose of the Court's discussion in *Hamilton* was to determine whether the Court had jurisdiction—i.e., whether there was a jurisdiction-conferring Notice of Disagreement (NOD)—regarding the three claims that the appellant alleged the Board had failed to address. *Id.* at 3. He acknowledges that the Court in *Hamilton* first determined that the RO decision adjudicating those claims was "'procedurally flawed'" and that the Court held that VA may not adjudicate claims where "'the claimant expressly indicates an intent that adjudication of certain specific claims not proceed at a certain point in time.'" *Id.* (quoting *Hamilton*, 4 Vet.App. at 544-45). He then points out that the Court found "that the 'flawed' decision 'was the first RO adjudication of the added claims,' and that a March 1989 'Supplemental Memorandum' the veteran submitted 'satisfies the criteria for an NOD as to that adjudication,'" and therefore the Court had jurisdiction over those three claims. *Id.* at 4 (quoting *Hamilton*, 4 Vet.App. at 545). From this, the Secretary draws the conclusion that *Hamilton* stands for the proposition that "a[n RO] decision, though 'unauthorized,' was a valid decision that could be appealed to the Board." *Id.* He contends that there is a difference between "authority" and "jurisdiction" and argues that, if the Court in *Hamilton* had intended the terms to be synonymous, "it could not have found it had jurisdiction over the claims that were the subject of the 'unauthorized' decision because a decision issued without proper jurisdiction is a nullity." *Id.* at 6 (emphasis omitted).

6

The Secretary also contends that, once a claimant files a Substantive Appeal, "the Board is obliged to resolve appeals," *id.* at 7 (citing 38 U.S.C. § 7107(a)(1) (Supp. IV 2012) (current version at 38 U.S.C. § 7107(a)(4))), in each case "in regular order according to" its place on the Board's docket, with some exceptions not relevant here. Secretary's Supp. Br. at 8-9 (citing 38 U.S.C. § 7107(a)(4) (2020) (corresponds to 38 U.S.C. § 7107(a)(1) (Supp. IV 2012))). He argues, therefore, that a claimant is not permitted to pause adjudication of his or her claim indefinitely. Secretary's Supp. Br. at 8-9. Finally, the Secretary agrees with Ms. Nall that there is no basis on which to distinguish written requests from verbal requests made on the record at a hearing, but he "disagrees that the facts in *Hamilton* support that point." *Id.* at 12.

## B. Collateral Estoppel[6]

We note that Ms. Nall contends in her amicus brief that collateral estoppel operates in this case—in other words, that the Court's March 2012 memorandum decision binds us on the issue of the effect of *Hamilton*, with respect to the appellant's requests to pause adjudication. Nall Br. at 1-2. "The doctrine of collateral estoppel, or issue preclusion, serves to bar the revisiting of issues that have already been litigated by the same parties or their privies based on the same cause of action." *Banner v. United States*, 238 F.3d 1348, 1354 (Fed. Cir. 2001). Even assuming that collateral estoppel could be used offensively to prevent VA from offering arguments as to the import of *Hamilton*,[7] the Court concludes that we need not address this issue on the merits because, as discussed below, we agree with our colleague's conclusion in the March 2012 memorandum decision that *Hamilton* requires VA to comply with a claimant's request to pause adjudication. And, to the extent that our colleague found in March 2012 that the Court lacked jurisdiction to address the appellant's claim, that question was not briefed by either party in the prior claim stream

---

[6] Although the Secretary asserts that "[t]he Court should reject this argument because [the a]ppellant did not raise a collateral[ ]estoppel issue in his brief or his motion for panel review and the Court did not ask for any briefing on that issue," Secretary's Supp. Br. at 13 (citing *Savage v. Gober*, 10 Vet.App. 488, 498 (1997)), the Court did not limit briefing to any particular questions or issues; we simply sought briefing on the case by qualified amici on the appellant's behalf, *see Groves v. Wilkie*, No. 17-3084, 2020 WL 3067584 (Vet. App. June 10, 2020) (nonprecedential per curiam order).

[7] *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979) (discussing the circumstances under which collateral estoppel could be used "'offensively' to prevent a defendant from relitigating issues resolved in [an] earlier proceeding"); *id.* at 329 (explaining that collateral estoppel is defensive when "a plaintiff [is] estopped from asserting a claim that the plaintiff had previously litigated and lost against another defendant," whereas it is offensive if "a plaintiff is seeking to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff").

and the Court has an obligation here to assess our jurisdiction. *See Hayre v. Principi*, 15 Vet.App. 48, 50 (2001), *aff'd*, 78 F. App'x 120 (Fed. Cir. 2003); *Heath v. West*, 11 Vet.App. 400, 402 (1998).

### C. Effect of *Hamilton v. Brown*

#### 1. Facts

The parties disagree as to the holding of *Hamilton* with respect to requests that VA pause adjudication of claims at the Agency level. A discussion of *Hamilton*'s unusual facts[8] is necessary. There, the RO denied benefits for lung cancer and Hodgkin's disease; the appellant filed an NOD with that decision and ultimately appealed to the Board. *Hamilton*, 4 Vet.App. at 543. In his Substantive Appeal, he stated that he suffered from numerous diseases, including lung cancer, Hodgkin's disease, autoimmune hemolytic anemia, premature aging, osteoporosis, osteomyelitis, and a lymphatic disorder. *Id.* At a hearing before the RO, the hearing officer asked the appellant if he wanted to amend his claim to include the issues of entitlement to benefits for conditions other than lung cancer and Hodgkin's disease; the appellant advised that he did not want his lung cancer and Hodgkin's disease claims to be further delayed and asked that the hearing officer proceed with only those claims. *Id.* The hearing officer confirmed that the only issues on appeal would be lung cancer and Hodgkin's disease. *Id.* "Despite this, . . . the RO denied service connection for osteomyelitis, osteoporosis, and premature aging," in addition to lung cancer and Hodgkin's disease. *Id.*

After the appellant submitted additional evidence, the RO issued an SSOC that addressed only the issues of entitlement to benefits for lung cancer and Hodgkin's disease. *Id.* The appellant testified at a second RO hearing; the RO again denied claims for benefits for lung cancer and Hodgkin's disease and issued another SSOC as to those two claims. *Id.* The appellant filed a second Substantive Appeal "referring specifically only to lung cancer." *Id.* The Board denied the appellant's claims for benefits for lung cancer and Hodgkin's disease and "did not mention osteomyelitis, osteoporosis, or premature aging." *Id.* On appeal to the Court, the appellant argued that the Board erred in not adjudicating claims for benefits for osteomyelitis, osteoporosis, and premature aging. *Id.*

---

[8] The Court in *Hamilton* consolidated the appeals of three appellants. The facts we recite here are those of appellant Powell. *See* 4 Vet.App. at 543-45.

In addressing the appellant's argument, the Court stated:

> Although our decisions in *Myers v. Derwinski*, 1 Vet.App. 127, 129 (1991), and *EF v. Derwinski*, 1 Vet.App. 324, 326 (1991), require that the Board and the RO adjudicate all claims reasonably raised by the claimant up until its decision, a corollary of that rule is that where, as here, the claimant expressly indicates an intent that adjudication of certain specific claims not proceed at a certain point in time, neither the RO nor [the Board] has authority to adjudicate those specific claims, absent a subsequent request or authorization from the claimant or his or her representative.

*Hamilton*, 4 Vet.App. at 544. The Court explained that "[a] contrary result would permit the RO or Board to act in a way that could prejudice a claimant's enjoyment of statutory and regulatory procedural rights (such as a detailed [Statement of the Case] under [38 U.S.C. §] 7105(d)) by deciding a claim on a record that had not been adequately developed." *Id.*

The Court noted that, aside from a single mention of "many disabilities" in a response to the first SSOC, the claims for benefits for osteomyelitis, osteoporosis, and premature aging "were not mentioned by the [appellant], his representative, the RO (including in the SSOC), or the [Board] until [the] appellant, through counsel," filed his principal brief with the Court. *Id.* The Court also noted that the appellant had not filed formal claims for those benefits, but found that "any failure on the part of the [appellant] to file a formal application as to his osteoporosis, osteomyelitis, and premature aging claims is deemed waived by the VA's failure to comply with the [38 C.F.R. §] 3.155(a) requirement to send him the formal application forms." *Id.* at 545. The Court stated that "[t]his lack of a formal claim thus further flaws the RO's . . . adjudication of those claims." *Id.* The Court concluded that the RO's adjudication was "procedurally flawed" as to those claims and that those claims "remain[ed] pending appropriate development and adjudication at the RO in accordance with applicable law and regulation." *Id.*

Nevertheless, the Court found that the RO decision, "although flawed, was the first RO adjudication" of the three claims and that a March 1989 filing by the appellant constituted a

jurisdiction-conferring NOD as to that decision.[9] *Id.* The Court therefore concluded that it had jurisdiction over the appeal of those matters.[10] *Id.*

## 2. Discussion

The central issue in this case is whether the Board erred in adjudicating the appellant's VRE claim in light of his requests that VA refrain from doing so and in the absence of his reauthorization to do so. With respect to this issue, the Board stated:

> The [appellant] has submitted numerous "motions to enjoin" the Board from issuing a decision with regard to the VRE claim. However, these notices do not constitute a withdrawal of the appeal, such that there is no basis for the Board to not proceed with its appellate review of this claim.

R. at 2.

To begin, we make clear that the appellant's requests that VA refrain from adjudicating his VRE claim did not deprive the Board of *jurisdiction* to address that claim, because jurisdiction is conferred by statute. In that regard, "[w]hen a claim is properly appealed to the Board, the Board is vested with the jurisdiction to review '[a]ll questions in a matter which under [38 U.S.C. § 511(a)] is subject to a decision of the Secretary.'" *Jarrell v. Nicholson*, 20 Vet.App. 326, 331 (2006) (en banc) (quoting 38 U.S.C. § 511(a)). As the Court stated in *Hayre*, "[j]urisdiction may not be 'assumed,' 'conceded,' or 'implied,' and cannot be bestowed on a court by the court itself, or any other court." 15 Vet.App. at 51. Further, a tribunal may only be divested of jurisdiction by a superior tribunal, *see Cerullo v. Derwinski*, 1 Vet.App. 195, 197 (1991), or by other circumstances not present here.[11]

---

[9] The Veterans' Judicial Review Act provided this Court jurisdiction only over "any case in which [an NOD] is filed under [38 U.S.C. §] 4005[ (1988)] [(current version at 38 U.S.C. § 7105)] . . . on or after" November 18, 1988. Veterans' Judicial Review Act, Pub. L. No. 100-687, 102 Stat. 4105, § 402 (1988). The requirement for a post-1988 NOD was subsequently repealed. Veterans Education and Benefits Expansion Act of 2001, Pub. L. No. 107-103, 115 Stat. 976, § 603(a) (2001).

[10] Because the en banc Court reviewed only the jurisdictional question, the Court returned appellant Powell's appeal to a single judge for adjudication on the merits. *Hamilton*, 4 Vet.App. at 545.

[11] *See, e.g.*, *Breedlove v. Shinseki*, 24 Vet.App. 7, 21 (2010) (per curiam order) (holding that, where a veteran dies while his or her claim is pending before the Court and no eligible accrued benefits recipient seeks substitution, the Board decision on appeal must be vacated for lack of jurisdiction); *Mason v. Nicholson*, 20 Vet.App. 279, 292 (2006) (holding that the parties' settlement of an application for attorney fees under the Equal Access to Justice Act divests the Court of jurisdiction over the application); *Aronson v. Brown*, 7 Vet.App. 153, 155 (1994) (explaining that, where an issue becomes moot, "the Court is divested of jurisdiction because there is no longer a case or controversy").

The Court's decision in *Hamilton* supports our conclusion here. As noted above, the Court there found that it had jurisdiction over the appeal of the three claims the appellant had initially asked VA not to pursue. *Hamilton*, 4 Vet.App. at 545. Underlying this conclusion is an implicit finding that, despite the appellant's request that VA *not* adjudicate three of his claims, the Board nevertheless had jurisdiction to address them because the appellant had filed an NOD as to the RO's "procedurally flawed" decision denying them.[12] *Hamilton*, 4 Vet.App. at 545; *see King v. Nicholson*, 19 Vet.App. 406, 409 (2006) ("[W]here the Board does not have . . . jurisdiction, then neither does the Court."); *see also Buckley v. West*, 12 Vet.App. 76, 82 (1998) ("Just as the Court's jurisdiction is dependent on a jurisdiction-conferring NOD, the Board's jurisdiction, too, derives from a claimant's NOD.").

Similarly, here, because the appellant's VRE claim was before the Board in December 2005 (and subsequently before the Court in November 2009), there can be no dispute that he filed an NOD as to VA's initial denial of his claim for VRE benefits. Further, there is no indication in the record after the Court's November 2009 remand that the claim ever became final, meaning it has been on appeal from the initial NOD for nearly 20 years. *See* R. at 1353. Because the appellant filed an NOD with the initial decision denying VRE benefits, the Board in July 2017 had jurisdiction over the appellant's claim.

In contrast, the Court in *Hamilton* determined that the appellant's request that VA not adjudicate his claims for benefits for osteoporosis, osteomyelitis, and premature aging deprived the RO of the *authority* to decide those claims. 4 Vet.App. at 544. The Court's holding in this regard was clear: "[W]here, as here, the claimant expressly indicates an intent that adjudication of certain specific claims not proceed at a certain point in time, neither the RO nor [the Board] has authority to adjudicate those specific claims, absent a subsequent request or authorization from the claimant or his or her representative." *Id.* As *Hamilton* requires, we conclude that the Board in this case acted without authority in adjudicating the appellant's VRE claim, in light of the Board's finding, which is supported by the record, that the appellant made multiple requests that VA refrain from doing so. R. at 2; *see* R. at 599 (June 2012), 603 (same), 562 (May 2013), 93 (Oct. 2016).

---

[12] As noted in footnote 10, *supra*, the en banc Court in *Hamilton* did not consider the merits of the appellant's argument; the single judge found that the Board should have adjudicated the claims and therefore remanded them. *Powell v. Brown*, 6 Vet.App. 325 (1993) (mem. dec.).

Moreover, even assuming that we were at liberty to reach a result at odds with the clear holding of the en banc Court, which we are not,[13] we do not find persuasive the Secretary's argument that this result is precluded on the grounds that section 7107 obligates the Board to proceed with adjudication in docket order regardless of a claimant's request to pause adjudication. Rather, as he concedes, the statute "does not literally require the Board to decide each case in docket order," Secretary's Supp. Br. at 8, and the Court has held that "strict adherence to docket order in the consideration and decision of cases before the Board would necessarily lead to an absurd result when considering the statute's overall structure and concepts relating to effective review of appeals," *Ramsey v. Nicholson*, 20 Vet.App. 16, 30 (2006). Similarly, the Secretary does not explain how we could reach a different result simply because "other statutes place time limits on claimants as to how quickly they must prosecute claims." Secretary's Supp. Br. at 7.

The Court acknowledges the Secretary's argument that a claimant should not be able to pause adjudication indefinitely, Secretary's Br. at 12, and that "the Board . . . has inherent authority to place reasonable limits on requests to halt adjudications," Secretary's Supp. Br. at 8. The Court also notes Mr. Schrier's assertion that the appropriate length of a pause in adjudication under *Hamilton* should be determined on a case-by-case basis, Schrier Br. at 6-7, as well as his suggestion that the Court "may want to consider establishing a precedent . . . requiring the RO, Board, or this Court to send periodic notices (for instance, every six months) advising the veteran that [he or she] has a *Hamilton* stay in place and requesting an update as to when [he or she] estimates the *Hamilton* stay should be lifted," Schrier Br. at 7. Here, because the Board addressed only whether the appellant's statements constituted a withdrawal of his appeal and did not discuss the circumstances under which VA could resume the adjudication process, and because we find, as discussed further below, that the appellant has not demonstrated that the Board's procedural error in adjudicating his VRE claim was prejudicial, we need not resolve that matter at this time.[14]

---

[13] *See Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992) ("Where there is an earlier panel or en banc opinion, we apply a rule that in a subsequent case, a panel or single judge may not render a decision which conflicts materially with such earlier panel or en banc opinion.").

[14] To be clear, nothing in this opinion prevents VA from taking steps to resume the adjudication process or deem a matter abandoned in the face of unreasonable delay. We conclude only that the Board must not simply disregard such a request, as it did here.

12

### 3. *Effect of* Hamilton *Error*

Having found that *Hamilton* is clear that VA must honor a claimant's request to pause adjudication of his or her claim, a request that the Board found that the appellant in this case made with respect to his VRE claim, we must consider the effect of the Board's error in proceeding prematurely with its adjudication.[15]  In that regard, the Court has already concluded that a request pursuant to *Hamilton* does not divest the Board of *jurisdiction* to act.  The question remains whether the Board proceeding without *authority* renders its decision void ab initio.  *See* Appellant's Informal Br. at 2.

"Void ab initio" means "null from the beginning."  BLACK'S LAW DICTIONARY 1885 (11th ed. 2019).  In other words, a decision that is void ab initio has no legal effect and is treated as though it never existed.  *See Breslow v. Brown*, 5 Vet.App. 560, 562 (1993) ("'A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack.  A void judgment is one which, from its inception, was a complete nullity and without legal effect.'" (quoting *Hooks v. Hooks*, 771 F.2d 935, 949 (6th Cir. 1985))).  Even if the Board lacked *jurisdiction* to adjudicate the appellant's claim, instead of simply the *authority* to do so, the Board decision would not be void ab initio for lack of jurisdiction in the absence of "'a clear usurpation of power.'"  *Breslow*, 5 Vet.App. at 562 ("'A court has the power to determine its own jurisdiction, and an error in that determination will not render the judgment void.  Only in the rare instance of a clear usurpation of power will a judgment be rendered void.'" (quoting *Hooks*, 771 F.2d at 949)).  Voiding the judgment, however, is not warranted where the Board had jurisdiction but exercised it prematurely; rather, in those circumstances the remedy generally would be to vacate the erroneous decision and remand for appropriate procedural compliance.  *See Bryant v. Wilkie*, 33 Vet.App. 43, 48-50 (2020).

Because the Board's procedural error does not render its decision denying the appellant's claim for VRE benefits void ab initio, we must next consider whether the appellant has "alleged with specificity any prejudice that resulted from" the Board's adjudication of his VRE claim.  *Marciniak v. Brown*, 10 Vet.App. 198, 201 (1997); *see* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 409

---

[15] As noted above, we are not bound by the March 2012 single-judge decision in a different claim stream, in which the Court found that, "[w]ithout the specific authorization of the appellant to do so, any adjudication by the Board would be void ab initio." R. at 630.

(2009) (holding that the harmless-error analysis applies to the Court's review of Board decisions and that the burden is on the appellant to show that he or she suffered prejudice as a result of VA error); *see also Hamilton*, 4 Vet.App. at 544 (stating that adjudication of claims where a claimant has requested that VA pause adjudication "could prejudice a claimant's enjoyment of statutory and regulatory procedural rights").

Here, neither the appellant nor amici explain how he was harmed by the Board's adjudication of his VRE claim. Although the appellant raises matters of equity, due process, and spoliation of records, the Court finds, as discussed below, that those arguments are unpersuasive; accordingly, they do not serve to establish that the Board's error prejudiced him in any way. Moreover, the appellant does not allege that if he had been afforded additional time prior to the Board's decision, he would have submitted additional evidence or argument that could have affected the outcome of his VRE claim. *Cf. Bryant*, 33 Vet.App. at 49-50 (finding prejudice where the appellant asserted that he would have submitted argument and evidence if afforded the maximum time to do so). In the absence of demonstrated prejudice, the Court need not remand this matter for the Board to correct its procedural error. *See Marciniak*, 10 Vet.App. at 201.

### D. Merits

In the decision on appeal, the Board denied entitlement to VRE benefits, finding that the appellant "did not maintain satisfactory conduct and cooperation in developing and implementing his individualized written rehabilitation plan . . . , due to his 20-year refusal to schedule and/or participate in the mandated counseling and evaluation session." R. at 3. The appellant objects to this finding, asserting that "the record and decisions by this Court document that it is the VA that has continually violated the law and [his] due process [Constitutional] rights." Appellant's Informal Br. at 5-6 (first alteration added). In that regard, he contends that, in its November 2009 memorandum decision, the Court "found during the preceding nine years that the VA had violated numerous laws and regulations . . . and found no wrong doing by [him]." *Id.* at 6 (citing R. at 1354). In fact, however, the Court in November 2009 agreed with the Secretary's concession that "the Board erred by *not addressing whether* VA had complied with various regulatory requirements before discontinuing services to a veteran, specifically 38 C.F.R. §§ 21.50(e), 21.362(b), 21.364(a), 21.180 [through 21].198, 21.420, and 21.198(b)(7) (2009)," R. at 1354 (emphasis added); the Court did *not* find that VA *violated* those regulations. To the extent that the appellant may be asserting that the Board in July 2017 did not discuss the regulations identified

by the Court in 2009, a review of the Board's decision reveals that the Board referred to those provisions, *see* R. at 5-7, 12-14, and the appellant does not allege that the Board's discussion is inadequate or erroneous, *see Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table); *Berger v. Brown*, 10 Vet.App. 166, 169 (1997).

The appellant also contends that, although the Board acknowledged his psychological disability, the Board "failed to ensure that [he] was afforded additional assistance, extenuating circumstances, due to his psychological disability." Appellant's Informal Br. at 7 (quoting *Comer v. Peake*, 552 F.3d 1362, 1369 (Fed. Cir. 2009), for the proposition that "a veteran who 'is afflicted with a significant psychological disability' may need additional assistance from the VA"; and *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980), for the proposition that, "when a claimant at an administrative hearing is 'handicapped by lack of counsel[,]' a reviewing court must make a greater effort 'to ensure that the claimant's rights have been adequately protected'"). With respect to assistance, the Board stated: "[T]he record clearly demonstrates the exhaustive efforts undertaken by VA to accommodate the [appellant's] claim, [including]: moving the venue of the meeting to locations closer to [his] home; offering to cover basic travel costs; and coordinating home visits. At no time did [he] cooperate with[] or . . . acknowledge[] said efforts." R. at 12. Although the appellant appears to dispute the Board's finding that, "[o]n at least two occasions, [he] has been in the presence of a VA vocational rehabilitation counselor but refused to engage in a meaningful manner," *id.*, by arguing that he never met with anyone at a VRE office and that VA failed to respond to requests for "the complete circumstances" surrounding the purported meeting, Appellant's Informal Br. at 6, he does not demonstrate that such a mistake, standing alone among the other evidence cited by the Board in support of its finding that VA adequately assisted him, was prejudicial to him. *See* 38 U.S.C. § 7261(b)(2); *Sanders*, 556 U.S. at 409.

Finally, to the extent that the appellant's reference to "extenuating circumstances," Appellant's Informal Br. at 7, may be interpreted as an argument that the Board failed to consider whether there were mitigating circumstances in his case that should have precluded VA from discontinuing his VRE benefits, *see* 38 C.F.R. § 21.364(b)(3),[16] his argument is undeveloped and

---

[16] This regulation provides that, "[w]hen the case manager determines that the veteran's conduct and/or cooperation are not in conformity with provisions of § 21.362(c), the case manager will," among other things, "[i]nterrupt the program to allow for more intense efforts, if the unsatisfactory conduct and cooperation persist." 38 C.F.R. § 21.364(b)(3) (2020). The regulation further provides: "If a reasonable effort to remedy the situation is unsuccessful during the period in which the program is interrupted, the veteran's case will be discontinued and assigned

does not demonstrate error on the part of the Board in this regard. *See* R. at 12 (finding that the appellant's "alleged mitigating circumstances are without merit"); *see also Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006) (holding that the Court is unable to find error when arguments are undeveloped).

### E. Other Arguments

#### *1. Equity*

The appellant asserts that he "has filed numerous equitable relief requests," and he asks the Court to issue an order directing the Secretary to file a statement attesting to what actions, if any, have been taken on his requests for equitable relief. Appellant's Informal Br. at 4. Additionally, he asks the Court to determine "whether the Secretary's exclusive authority to grant equitable relief pursuant to 38 U.S.C.[]§[]503 and 38 C.F.R.[]§ 2.7 (2009) necessarily connotes that the failure to process requests and the authority to deny such relief belongs exclusively to the Secretary." Appellant's Informal Br. at 5. The Secretary contends that "[t]his Court has long held that the Board has no jurisdiction to review the Secretary's decision to grant or deny equitable relief, and, because this Court's jurisdiction is derived from the Board's jurisdiction, this Court has recognized that it may not review such a decision either." Secretary's Br. at 16.

As to the appellant's first request, this appeal is not the proper avenue through which to seek relief. To the extent that the appellant asserts that the Secretary has unreasonably delayed action on his equitable relief requests, the Court "cannot invoke equity to expand the scope of its statutory jurisdiction." *Burris v. Wilkie*, 888 F.3d 1352, 1361 (Fed. Cir. 2018) (emphasis omitted). The Secretary's authority to grant relief based on the principles of equity is separate and distinct from his authority to determine entitlement to benefits under the law. *Darrow v. Derwinski*, 2 Vet.App. 303, 305 (1992). The authority to determine entitlement to benefits is exercised pursuant to 38 U.S.C. § 511(a) and has been delegated to the ROs, subject to review by the Board, and requires a determination of "whether the claimant is legally and factually eligible to receive the benefit claimed." *Darrow*, 2 Vet.App. at 304. The authority to grant equitable relief is exercised pursuant to 38 U.S.C. § 503 and has been committed to the sole discretion of the Secretary, without determinative standards or criteria. *Darrow*, 2 Vet.App. at 306. As *Darrow*

---

to 'discontinued' status unless mitigating circumstances are found." *Id.* Mitigating circumstances include the effects of a claimant's service-connected and nonservice-connected conditions, family or financial problems that led to the unsatisfactory conduct or cooperation, and "[o]ther circumstances beyond the veteran's control." 38 C.F.R. § 21.364(b)(3)(i)-(iii).

makes clear, proceedings before the RO and the Board pursuant to section 511(a) are separate and distinct from the pursuit of equitable relief from the Secretary pursuant to section 503. Thus, the Court cannot grant or otherwise decide an issue as to the Secretary's equitable relief power.

The appellant's second request has two parts; he first asks the Court to determine whether the Secretary is solely responsible for the failure to process equitable relief requests; he then asks the Court to determine whether the authority to deny those requests is the Secretary's alone. Appellant's Informal Br. at 5. In that regard, the Court notes that "[t]he authority to grant . . . equitable relief . . . has not been delegated and is reserved to the Secretary." 38 C.F.R. § 2.7(c) (2020). The Court, however, has no need to definitively answer the appellant's questions, as we lack jurisdiction over requests for equitable relief. *Darrow*, 2 Vet.App. at 306.

### 2. Due Process

Although the appellant argues that the Board denied him due process because it adjudicated his VRE claim absent his authorization to do so, Appellant's Informal Br. at 2-3, he has not clearly explained how he was denied due process in his specific appeal or harmed by any such due process violation. *See Brewer v. West*, 11 Vet.App. 228, 236-37 (1998) ("'Federal courts will not pass upon constitutional contentions presented in an abstract rather than in a concrete form.'" (quoting *Gov't and Civic Emps. Org. Comm. v. Windsor*, 353 U.S. 364, 366 (1957))). In this regard, the Court notes that, contrary to the appellant's assertion, in neither its November 2009 nor its March 2012 memorandum decisions did the Court find "that the Board repeatedly committed illegal actions and violated [his] due process rights." Appellant's Informal Br. at 2; *see* R. at 618-36, 1349-55.

The Court also concludes that the appellant has not demonstrated that "sanctions equal to the grievous nature of over twenty years of illegal actions and due process violations" are warranted in this case. Appellant's Informal Br. at 3. Sanctions in this Court are reserved for actions that defy a clear court order, and the appellant has not identified any such action on the part of VA. *See* 38 U.S.C. § 7265; *Pousson v. Shinseki*, 22 Vet.App. 432, 437 (2009) (per curiam order) (holding that sanctions are reserved for situations in which (1) there is a Court order that is clear and unambiguous, (2) there is clear and convincing proof of noncompliance with that Court order, and (3) it is clear that the party at fault was not reasonably diligent in trying to abide by the Court order).

### 3. Creation of Records

The appellant "seeks a Court Order for the appointment of [a] Special Master, to deal with th[e] massive VA[-]created spoliation of the records and [asks] that an adverse inference be assessed against the Secretary in regard to each of [his] claims." Appellant's Informal Br. at 4 (citing 5 U.S.C. § 552a). The Secretary counters that Congress vested jurisdiction over matters involving 5 U.S.C. § 552a in the district courts. Secretary's Br. at 14-15; *see* 5 U.S.C. § 552a(g)(1). Here, the Court concludes that the appellant has not met his burden of demonstrating that the Court has jurisdiction over a record dispute governed by the Privacy Act. *Lawrence v. Wilkie*, __ Vet.App. __, __, No. 20-5697, 2020 WL 7502357, at *5 (Dec. 22, 2020) (holding that "to demonstrate that the Agency action sought to be corrected—compliance with the Privacy Act and the [Freedom of Information Act]—falls within the Court's jurisdiction would require a showing that the petitioner's request for records was made pursuant to a law affecting the provision of VA benefits, that VA's decision on the matter could be the subject of a Board decision, and that the Court would have subject matter jurisdiction to review the Board's decision"); *see also McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 188-89 (1936); *Bethea*, 2 Vet.App. at 255.

### 4. Proposed Class Action

In his motion for panel review, the appellant asserted that "class action status may[]be appropriate concerning the applicability and ability of a claimant to halt adjudication." Motion for Panel Review at 7. The Court notes that the self-represented appellant "has not asserted that he has any training as an attorney," and thus could not demonstrate that he can "'fairly and adequately protect the interests of the class.'" *Thompson v. Wilkie*, 30 Vet.App. 345, 347 (2018) (per curiam order) (first citing *DeBrew v. Atwood*, 792 F.3d 118, 132 (D.C. Cir. 2015); and then quoting Fed. R. Civ. P. 23(a)(4)); *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975); *see* U.S. VET. APP. R. 22(a) (relief on a class action basis "may only be sought by represented parties"). Because this unsupported request was improperly raised in his motion for panel review, we will not further address it. *See* U.S. VET. APP. R. 35(e) ("[A] motion for panel decision . . . shall state the points of law or fact that the party believes the Court has overlooked or misunderstood."); *see also Dixon v. Shinseki*, 741 F.3d 1367, 1378 (Fed. Cir. 2014) ("Motions for reconsideration do not afford litigants the opportunity . . . to advance arguments that properly should have been presented in an earlier proceeding.").

## III. CONCLUSION

After consideration of the parties' pleadings and a review of the record, the Board's July 11, 2017, decision denying entitlement to VRE benefits is AFFIRMED.


BARTLEY, *Chief Judge*, concurring:  I agree that affirmance of the July 2017 Board decision is the correct result but disagree with my colleagues' reasoning—*Hamilton* did not create a procedural tool that allows claimants to indefinitely pause the VA adjudication process at will. *Hamilton v. Brown*, 4 Vet.App. 528, 544 (1993) (en banc), *aff'd*, 39 F.3d 1574 (Fed. Cir. 1994).  It couldn't have done so since the veteran in that case never requested VA to suspend adjudication on any of his claims.  In addition, I find no other authority, statutory or regulatory, that would support suspension of the VA adjudication process at a claimant's will.

Mr. Powell, the relevant appellant in the cases consolidated in *Hamilton*, originally filed a claim for service connection for two conditions, lung cancer and Hodgkin's disease (HD). *Hamilton,* 4 Vet.App. at 543.  He was denied and appealed, eventually filing a Substantive Appeal form on which he stated that he also suffered from three additional conditions, premature aging, osteoporosis, and osteomyelitis.  *Id.*  He submitted a memo requesting service connection for all five conditions.  *Id*.  He was asked at a scheduled RO hearing whether he wanted to amend his lung cancer and HD appeals to include service connection for the three additional disabilities; he answered that because he didn't want to delay the lung cancer and HD claims, he would proceed with the appeal only as to those two issues.  *Id*.  The RO denied service connection for all five conditions but afterward issued an SSOC only as to lung cancer and HD and from then on, and before the Board, only lung cancer and HD claims were adjudicated.  *Id*.  Mr. Powell subsequently raised the premature aging, osteoporosis, and osteomyelitis claims when he appealed the Board's lung cancer and HD denials to this Court.  *Id*.

On these facts, the most that can be said is that Mr. Powell chose not to proceed with adding premature aging, osteoporosis, and osteomyelitis to his then-current appeal—there is no indication that he requested suspension of VA action on those claims.  *Hamilton* says as much: "[T]he claimant had decided, pursuant to discussion with and recommendation from the RO hearing officer, to limit the case then under adjudication to the issues of service connection for lung cancer and HD."  4 Vet.App. at 544.

But as the majority here notes, *Hamilton* then stated "where, as here, the claimant expressly indicates an intent that adjudication of certain specific claims not proceed at a certain point in time, neither the RO nor BVA has authority to adjudicate those specific claims, absent a subsequent request or authorization from the claimant or his or her representative." *Id*. This sentence has been interpreted as allowing a claimant to suspend VA adjudication at will, and the majority hangs its hat on that quote. However, "[i]t is axiomatic that the language in . . . [any case] must be read in light of the facts and issues that were before the court when the language was written." *Grantham v. Brown*, 114 F.3d 1156, 1158 (Fed. Cir. 1997). Because suspension of adjudication wasn't at issue in *Hamilton*—Mr. Powell merely asked that his three additional claims not proceed with the lung cancer and HD appeals—that case cannot stand for the proposition that VA is required to indefinitely suspend adjudication of a claim at the claimant's will.

In short, I respectfully disagree with the majority that *Hamilton* created a tool for at-will suspension of adjudication. Nevertheless, because my colleagues ultimately conclude that the July 2017 Board decision, which determined that suspension is not warranted, should be affirmed, I concur in the result.